UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CIVIL ACTION NO.

```
* * * * * * * * * * * * * * * * * * * * * * * * *
CTC COMMUNICATIONS,                             *
                                                *
        Plaintiff                               *
VS.                                             *     COMPLAINT
                                                *
INTERNET BUSINESS SYSTEMS,                      *
                                                *
        Defendant                               *
                                                *
* * * * * * * * * * * * * * * * * * * * * * * * *
```

RECEIPT # 60580
AMOUNT $150
SUMMONS ISSUED YES
LOCAL RULE 4.1
WAIVER FORM
MAGISTRATE JUDGE MBB
BY DPTY. CLK.
DATE 12/6/04

The Plaintiff, CTC Communications Corp. ("CTC"), by its attorneys Cohen & Dussi, LLC, as and for its Complaint alleges as follows:

## PARTIES

1. The Plaintiff, CTC COMMUNICATIONS (hereinafter the "Plaintiff"), is a corporation duly organized by law, having a usual place of business at 115 Second Avenue, Waltham, MIDDLESEX COUNTY, Massachusetts.

2. The Defendant, INTERNET BUSINESS SYSTEMS (hereinafter the "Defendant"), is a corporation duly organized by law, having a usual place of business at 1296 Blue Hills Avenue, Bloomfield, Connecticut, 06002.

## JURISDICTION

3. This Court has jurisdiction over this claim under 28 U.S.C. Section 1331, as the Defendant's liability arises under a tariff filed with the Federal Communications Commission and Massachusetts Department of Telecommunications and Energy (hereinafter collectively the "F.C.C.").

4. The Court also has jurisdiction over this claim under the language of the CTC Customer Service Agreement, attached hereto as Exhibit "A", which states in part that "[t]his Agreement shall be govenred by the laws of the Commonwealth of Massachusetts."

## COUNT I

### (For Services Rendered)

5.  The Plaintiff reavers, realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 5 above with the same full force and effect as if expressly set forth herein.

6.  The Defendant owes the Plaintiff the total sum of Ten Thousand Nine Hundred Twenty-Eight and 01/100 ($10,928.01) Dollars, for services rendered by the Plaintiff to the Defendant, together with interest thereon from September 9, 2003, on or before which date demand for payment was duly made, plus interest and costs.

## COUNT II

### (For Breach of Contract)

7.  The Plaintiff reavers, realleges and specifically incorporates herein by reference the allegations contained in paragraphs 1 through 6 above as if they were set forth herein.

8.  On or about October 26, 2001, the Defendant entered into and executed a Customer Service Agreement (hereinafter the "Agreement") with the Plaintiff. A true and accurate copy of the Agreement is attached hereto as Exhibit "A".

9.  Based upon the same, the Plaintiff provided services to the Defendant in accordance with and subject to the terms and conditions set forth in the Agreement.

10. Pursuant to said Agreement, the Plaintiff rendered services to the Defendant in the sum of Ten Thousand Nine Hundred Twenty-Eight and 01/100 ($10,928.01) Dollars.

11. The Defendant has breached its Agreement with the Plaintiff by failing to make payment pursuant to the Agreement.

12. The Plaintiff has made demands for payment from the Defendant but the Defendant has failed to make payment in full.

13. The Defendant owes the Plaintiff the sum of Ten Thousand Nine Hundred Twenty-Eight and 01/100 ($10,928.01) Dollars, plus interest from September 9, 2003, on or before which date demand for payment was duly made, costs and attorneys' fees.

## COUNT III

### (For Unjust Enrichment)

14. The Plaintiff reavers, realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 13 above with the same full force and effect as if expressly set forth herein.

15. The Defendant has failed, neglected, or refused to pay for said services rendered, the value of which is Ten Thousand Nine Hundred Twenty-Eight and 01/100 ($10,928.01) Dollars.

16. The Plaintiff has made demand upon the Defendant for payment in full of its obligations to the Plaintiff, but the Defendant has failed, neglected, or refused to satisfy in full its obligations for the services rendered by the Plaintiff.

17. The Defendant has been unjustly enriched by the receipt of said services rendered, for which the Plaintiff is entitled to recover the sum of Ten Thousand Nine Hundred Twenty-Eight and 01/100($10,928.01) Dollars, plus interest from September 9, 2003, on or before which date demand for payment was duly made, costs and attorneys' fees.

## COUNT IV

### (For Account Annexed)

18. The Plaintiff reavers, realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 17 above with the same full force and effect as if expressly set forth herein.

19. The Defendant owes to the Plaintiff the sum of Ten Thousand Nine Hundred Twenty-Eight and 01/100 ($10,928.01) Dollars, plus interest from September 9, 2003, on or before which date demand for payment was duly made, plus costs and attorneys' fees, pursuant to the account annexed hereto as Exhibit "B" and incorporated herein by reference.

WHEREFORE, the Plaintiff demands judgment against the Defendant in the sum of Ten Thousand Nine Hundred Twenty-Eight and 01/100 ($10,928.01) Dollars, plus interest from September 9, 2003, costs and attorneys fees.

By its attorneys,

Date: _____

_____
John J. Dussi, BBO #546355
COHN & DUSSI, LLC
25 Burlington Mall Road, 6th Floor
Burlington, MA 01803-4158
(781) 494-0200

PLAINTIFF'S VERIFIED AFFIDAVIT PURSUANT
TO MASSACHUSETTS GENERAL LAWS, CHAPTER 231, SECTION 13 (B)
CTC Communications vs. Internet Business Systems

I, _Brian Chamberlin_  _Collection Mgr_
(Name)                              (Title)

of the Plaintiff CTC Communications

having personal knowledge of the facts in the above-captioned case, and based upon the books and records of the Plaintiff, kept in the ordinary course of business, do hereby state that the total amount due the Plaintiff CTC Communications is $10,928.01, plus interest from

for   [ ] A. Goods Sold & Delivered   [X] B. Services Rendered

     [ ] C. Money Lent                [ ] D. Other (Please Specify)
     _____

according to the account annexed to the Plaintiff's Complaint.

A Statement of principal and interest as set forth as follows:

Principal                                                      $ 10,928.01

Interest                                                       $_____

Total Accrued Interest                                         $_____

TOTAL PRINCIPAL AND INTEREST AS OF _9/9/03_                    $ 10,928.01

_____
(Signature)

_Collection Mgr_
(Title)

Then personally appeared before me the above-named _Brian Chamberlin_ who is the _Collection Mgr_ of _CTC Communications_ and swore that the above statements are true.

_____
Notary Public
My Commission Expires:        COMMISSION EXPIRES
                              _____ 22, 2004

Seal:
20031167

Exhibit "A"



**Application for Service**

| **Installation Information** | | **Billing Information** | |
|---|---|---|---|
| Company Name: Internet Business systems | | Bill To: Internet Business systems | |
| Install Address: 1296 Blue Hills Ave Bloomfield, CT 06002 | | Billing Address: 1296 Blue Hills Ave Bloomfield, CT 06002 | |
| Contact: Bill Kellog | Phone: (860) 769-6697 | Contact: Bill Kellog | Phone: (860) 769-6697 |
| EMail: | Fax: | EMail: | Fax: |

### Credit Information

☑ Corporation  ☐ Partnership  ☐ Proprietorship  ☐ Tax Exempt (Attach Proof)  ☐ Other

Nature of Business: Computer Networking
Years in Business: 8   SIC:    Tax ID: #06-1371963   Tax Exempt ID(s):

**Ownership Information** (Required for Partnerships, Proprietorships and Small Businesses)

| Name | Address | Phone | SS# |
|---|---|---|---|
| | | | |

**Reference Information (2 Major Trade References and Bank)**

| Trade Name | City, State | Phone | Account # |
|---|---|---|---|
| See attached | | | |

| Bank Name | Contact | Account # |
|---|---|---|
| | | |

Customer hereby authorizes CTC to perform any investigation necessary to determine the credit worthiness of the Company. CTC reserves the right to deny service or otherwise require a deposit as a condition of service from any applicant whose credit history is found to be unsatisfactory. CTC's Acceptance of this Application for Service is contingent upon Customer's execution of CTC's standard Service Agreement.

Accepted:
**Customer**

Authorized Representative   Bill Kellog

Title: Vice President
Date: 10/26/2001

CTC Communications Corp.
CTC Account Executive   Date: 10/26/01
Jason Benoit
CTC Branch Manager   Date: 10/29/01



**CUSTOMER AUTHORIZATIONS**

---

**LETTER OF AUTHORIZATION PREFERRED CARRIER SELECTION FORM**

The Customer's signature below confirms that for each of the phone numbers associated with those Billing Telephone Numbers identified on the Customer's Local and Long Distance Services addendum:

a) Customer selects CTC Communications Corp. (CTC) as its primary provider of
☒ local exchange service  ☒ intraLATA toll service  ☒ long distance service ; that

b) Customer designates CTC as its agent for purposes of changing primary service provider(s); that

c) Customer understands that the selection of a new intraLATA toll or InterLATA service provider may result in the imposition of a charge by Customer's local exchange company for changing service providers; that

d) Customer understands that only one service provider can be designated as the primary carrier for each of the service(s) selected above; and that

e) Customer is the Customer of record of other individual authorized to select the provider for the service(s) indicated above

Authorized Signature
Name:
Title:                          Date:

---

**AUTHORIZATION TO ACCESS CUSTOMER CONFIDENTIAL INFORMATION**

Authorization of CTC's Use of Customer Proprietary Network Information (CPNI). Under Section 222 of the Telecommunications Act (the "act") a customer has the right, and the carrier, an obligation, to protect the confidentiality of CPNI. CPNI includes, but is not limited to, customer account information pertaining to usage, calling plans and other presubscribed products and services. The Act also restricts a carrier from accessing CPNI absent customer's approval for purposes other than the provisioning of service. The parties recognize that access to such information will assist CTC in determining those CTC products and services which best suit Customer specific telecommunications needs. Therefore, during the term of the Customer's Agreement, Customer's signature below authorizes CTC to access Customer's account information. Except as may be required by law, CPNI shall not be disclosed to any third (3rd) party without Customer's express written consent.

While presubscribed to CTC's services (or until such other time as I otherwise affirmatively revoke or limit), I hereby authorize CTC to access my CPNI.

Authorized Signature
Name:
Title:                          Date:

---

**LETTER OF AUTHORIZATION PREFERRED CARRIER FREEZE**

The Customer's signature below confirms that for each of the telephone numbers associated those Billing Telephone Numbers identified on the Customer's Local and Long Distance Services Addendum:

a)   that Customer has selected CTC as it primary provider and elects to impose a preferred carrier freeze for each of the following services:
☒ local exchange service  ☒ intraLATA toll service  ☒ long distance service

b)   that Customer designates CTC as its agent for purposes of implementing the preferred carrier freeze; that

c)   Customer acknowledges that implementation of the preferred carrier freeze may result in a charge; that

d)   Customer understands that Customer will be unable to make a change in its carrier selection unless she or he lifts the preferred carrier freeze; that

e)   CTC will not process any request received from any 3rd party on behalf of Customer to lift the preferred carrier freeze.

Authorized Signature
Name:
Title:                          Date:

---

CTC Communications Corp., 220 Bear Hill Road, Waltham, MA  02451    1.800.883.6000

## CTC CUSTOMER SERVICE AGREEMENT

**Scope of Agreement.** CTC Communications Corp. ("CTC" or the "Company") agrees to provide Customer with those services identified in Exhibit A, attached hereto and made part hereof as may be amended from time to time through a Customer Change Order. Services provided under Exhibit A and subsequent Change Orders shall be governed by the terms and conditions set forth herein. Certain services provided under this Service Agreement ("Agreement") are also governed by the terms and conditions found in CTC tariffs on file with state regulatory agencies and the Federal Communications Commission (the "FCC"). For such services, in the event of any conflict between the terms and conditions set forth herein and those identified in CTC's tariff, in all instances, CTC's tariff(s) shall prevail.

**Payments and Financial Responsibility.** All invoices are due and payable upon Customer's receipt thereof. Any payment not received within thirty (30) days following the due date shall be deemed past due. CTC reserves the right to assess a late fee of one and one half percent (1.5%). Customer shall be liable for all charges incurred as a result of Customer's use of CTC's services, including charges resulting from theft, and fraudulent or unauthorized use of such Service. Customer shall notify CTC in writing of any disputed charge or amount within thirty (30) days of Customer's receipt of any invoice containing such disputed charge or amount. In no event shall Customer's notice of a dispute relieve Customer from its obligation to pay in full all non-disputed charges and amounts.

**Right of Entry and Installation Testing and Adjustment of CTC Provided Equipment.** Customer shall allow CTC and its suppliers reasonable access to Customer's premises for purposes of installing, inspecting or maintenance of Company-provided equipment (Equipment) on located Customer's property.

Customer shall make available on-site technical personal qualified to assist CTC and its sub-contractors in its installation, testing and maintenance of any Company provided equipment. Upon CTC's request, Customer shall provide CTC and its sub-contractors with information regarding specifications, drawings, and other technical information pertaining to customer premises equipment, building, blueprints, layouts and designs, emergency contingency plans and property site maps.

Customer shall be responsible for a) informing CTC and its suppliers as to the existence of any hazardous material or condition on its premises; b) securing all necessary permits and authorizations required for any work to be performed on Customer's premises; and c) providing CTC and its suppliers with a suitable secured and protected area for storage of CTC's equipment pending completion of any installation or maintenance activity.

**Time and Materials.** Certain services under this agreement may require periodic dispatch of CTC personnel or its contracted suppliers to Customer's premises for purposes of installation, repair and routine maintenance. Customer shall be responsible for any time and material charges associated with CTC's dispatch of such personnel or contractors.

**No Title.** In connection with certain services furnished hereunder, CTC will install and maintain a network terminating device or such other equipment (Equipment) on Customer's premises, which becomes the terminating point of CTC's network. Such equipment shall at all times remain the property of the Company and any installation on the Customer's premises does not serve to create any title, interest or ownership by the Customer in such Equipment.

**Return of Company Equipment.** Upon termination of Service, Customer will provide Company with reasonable access to Customer's premise for purposes of removing any Company Equipment. In the event, Customer fails to provide Company with said access or should the Equipment be returned to the Company in a condition worse than which could be expected through the normal use and wear of the Equipment, then, in such event, Customer will be liable to the Company for the then current replacement cost of the Equipment.

**Minimum Period.** Except as otherwise provided herein or as set forth in CTC's applicable tariff(s), the minimum period for services provided hereunder is ninety (90) days.

**Term Commitment.** Customer agrees to utilize CTC's Service(s) for the duration of the term(s) specified in Exhibit A or any subsequent Change Order issued hereunder.

**Termination for Default.** The Customer shall be in default of this Agreement in the event a) Customer fails to pay any amount due hereunder within thirty (30) days of the payment due date; b) Customer provides inaccurate, false otherwise misleading information in its application for Service, or c) Customer utilizes CTC services for any unlawful purpose or for any other purpose than that for which the Service is intended. Notwithstanding any other remedies which CTC may have available to it by law or equity, in the event of any Customer default under this Agreement which is not cured within thirty (30) days following written notice thereof, CTC may terminate this Agreement without further notice and immediately discontinue any and all Services provided hereunder. Nothing contained herein shall relieve customer of its obligations to pay CTC for services provided up through the date of termination.

**Termination without Cause.** Month-to-Month. Following expiration of any applicable Minimum Period, Customer may terminate any service provided under a month-to-month service option with sixty (60) days written notice. Term Plans. In the event Customer terminates discontinues any resold service provided under a term plan with the Company prior to the expiration of the then current term, Customer will be responsible for any termination penalties assessed CTC by its underlying providers. Notwithstanding the foregoing, in the event Customer terminates a twelve (12) month term plan for PPN Services, then Customer will be assessed a termination penalty in an amount equal to the monthly recurring charges times the number of months remaining in the twelve month term. In the event Customer terminates a twenty four (24) month term plan for PPN services, then Customer shall be assessed a termination penalty in an amount equivalent to the difference between the monthly rate associated with the twenty four (24) month term and the monthly rate associated with the twelve (12) month term times the number of months the Customer was on the PPN service. In addition, in the event Customer terminates during the first twelve (12) months of a twenty (24) month term plan, Customer will also be liable for the early termination charges associated with the early termination of a twelve (12) month term plan as set forth above.

X [signature]

## CTC CUSTOMER SERVICE AGREEMENT (cont'd)

Excuse of Performance. CTC shall not be liable for any delay or failure of performance of any part of this Agreement to the extent that such failure or delay is caused by Acts of God, acts of civil or military authority, government regulations, embargoes, epidemics, war, terrorist acts, riots, insurrections, fires, explosions, earthquakes, nuclear accidents, floods, strikes, power blackouts, cable cuts, volcanic action, other major environmental disturbances, unusually severe weather conditions, inability to secure products or services of other persons or transportation facilities, or acts or omissions of transportation common carriers or other causes beyond the reasonable control of the Company. If any excuse of performance occurs, the Company shall give reasonable notice to Customer and take all reasonable steps to correct the excuse of performance condition. For the duration of any excuse of performance hereunder, the duties of CTC under this Agreement shall be abated and shall resume without liability thereafter.

Indemnification. Customer shall indemnify and hold CTC, its parent, affiliates and sub-contractors, harmless from and against all claims for damages (including reasonable attorney's fees) resulting from claims for libel, slander, infringement or copyright, or unauthorized use of any trademark, trade name or service mark, or any other injury to any person, property or entity arising out of the material, data, information or other content transmitted over CTC's facilities.

Customer shall indemnify and hold CTC, its parent, affiliates and sub-contractors, harmless from any claim, loss or damages, including reasonable attorney's fees, resulting from Customer's breach of any term of this Agreement, Customer's placement of any material or content on CTC's network, or from Customer's use of CTC's services, regardless of Customer's knowledge or consent.

CTC MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO THE DESCRIPTION, COMPLETENESS, QUALITY, MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF ANY SERVICE PROVIDED PURSUANT TO ANY SERVICE ORDER ISSUED HEREUNDER. CTC's liability for any damages arising from errors, mistakes, omissions, interruptions or delays of the Company, its agents, employees or underlying carriers in the course of establishing, furnishing, rearranging, moving, terminating, maintaining, restoring or changing Service or facilities provided hereunder, or the Company's failure to perform any other duty arising out of this Agreement shall not exceed an amount equivalent to the actual proportionate charge for the Service applicable to the period during which the Service was affected.

In no event shall CTC be liable for any incidental, indirect, special or consequential damages (including lost revenue or profit) of any kind whatsoever, regardless of cause or foreseeability thereof.

Use of Service. The Customer shall not use any CTC Service in any manner other than that for which the Service was intended and shall refrain from using the Company's services in any manner which would adversely affect the Company's equipment or the Company's service to others. The Company reserves the right to discontinue service without notice in the event of any such unlawful or adverse use.

Assumption of Liability. Under certain limited circumstances, CTC may assume Customer's obligations under an existing contract with Customer's local exchange company (LEC). In the event of any such assumption, Customer shall become liable to CTC for the satisfaction of all terms and conditions of such contractual obligations assumed by CTC, including full termination liability.

Assignment. CTC may assign this Agreement in accordance with the laws of the Commonwealth of Massachusetts. Customer may not assign this Agreement without the prior written consent of the Company.

Miscellaneous. This Agreement shall be governed by the laws of the Commonwealth of Massachusetts. Failure of either party to insist upon the strict compliance by the other with any of the terms, covenants or conditions of this Agreement shall not be construed as a waiver of any subsequent breach. Each provision of this Agreement is severable from the whole and if any one provision of this Agreement is declared invalid or unenforceable, the other provisions shall remain in full force and effect. This Agreement may only be modified by written instrument executed by both parties.

Entire Agreement. This Agreement supersedes any and all prior agreements, understandings and representations of the parties with respect to the services provided hereunder. The terms and conditions set forth in this Agreement and those found in applicable CTC tariffs represent the entire understanding of the parties with respect to the services provided hereunder.

ADDITIONAL TERMS AND CONDITIONS APPLICABLE TO SUBSCRIBERS OF CTC INTERNET AND WEB HOSTING SERVICES

Customer acknowledges and agrees that CTC's Internet and Web Hosting services are also governed by the terms and conditions of the Company's Acceptable Use Policy, incorporated herein by reference. CTC reserves the right to revise the terms and condition of its Acceptable Use Policy. The Company shall provide notice to Customer of any such revisions. Customer's continued use of the Service subsequent to the delivery of such notice shall constitute Customer's acceptance thereof. CTC's Acceptable Use Policy is posted on the Company's web site at www.ctcnet.com. Customer warrants and represents that it will abide by the terms and conditions of this Agreement and terms set forth in CTC's Acceptable Use Policy while subscribing to such services.

Accepted:
CTC Communications Corp.
By: _____
Title: Account Executive
Date: 10/24/2001

By: _____
Title: _____
Date: ___/___/___.

# Exhibit "B"



```
GUI/400 RTS Pro
 5/16/03  10:33:29                Feature Detail              PWR050R4   LIDONJ
                                                                         QPADEV0020


 Circuit Number     :  470592 001           Status : BIL
 Feature Type       :  ETERMCHG             Charge :         .00
                                       Install Charge :    2000.00

 Description        :  Early Termination
 AE: GREENB
 NC: PASSDB
 Transaction date:     3/12/03
 Approval date      :  3/12/03
 Confirm date       :  3/11/03
 Sent to billing    :  3/17/03
 Deactivation dte:     0/00/00
 Feature Item ID :
 PSR Order #        :
 Circuit ID         :  1000 /VT1    /I1687512CP1/HRFRCT03X08

 Speed              :



 F2=Update Status

                SA        MW    KB    K3    DM    IM         III 206 215 60 4
```

```
TCR4200            130 - CTC Communications              System: S1023750
 5/16/03                 Accounts Receivable Inquiry     Wrkstn: QPADEV0129

Customer: 687512    INTERNET BUSINESS SYSTEMS
                                  Balance..............:    10928.01
   1=Select Detail                Pending Adjustments..:         .00
          Billing                 Adjusted Balance.....:    10928.01
Select    Period    Description            Billing    Payments    Adjustments
   _    12 / 01 DEC BILLING SUMMARY        2113.15         .00       1806.58
   _    01 / 02 JAN BILLING SUMMARY        3859.90         .00            .00
   _    02 / 02 FEB BILLING SUMMARY        1559.31      523.15            .00
   _    03 / 02 MAR BILLING SUMMARY        1560.11         .00            .00
   _    04 / 02 APR BILLING SUMMARY        1645.18     3119.42            .00
   _    05 / 02 MAY BILLING SUMMARY        1611.06     3859.90            .00
   _    06 / 02 JUN BILLING SUMMARY        1555.83     1645.18            .00
   _    07 / 02 JUL BILLING SUMMARY        1544.06     1611.06            .00
   _    08 / 02 AUG BILLING SUMMARY        1524.23     1555.83            .00
   _    09 / 02 SEP BILLING SUMMARY        1493.22     1544.06            .00
   _    10 / 02 OCT BILLING SUMMARY        1499.63         .00            .00
                                                                      More...

F3=Exit                       F12=Previous     F8=Pending Adj.
```

```
 GUI/400 RTS Pro                                                                    [X]
TCR4200              130 - CTC Communications             System:    23750
5/16/03                  Accounts Receivable Inquiry      Wrkstn: QPADEV0129


Customer: 687512    INTERNET BUSINESS SYSTEMS
                                  Balance..............:    10928.01
                                  Pending Adjustments..:         .00
   1=Select Detail                Adjusted Balance.....:    10928.01
           Billing
Select     Period      Description            Billing    Payments    Adjustments
  _      11 / 02  NOV BILLING SUMMARY          1490.86        .00           .00
  _      12 / 02  DEC BILLING SUMMARY          1491.56        .00           .00
  _      01 / 03  JAN BILLING SUMMARY          1492.33        .00           .00
  _      02 / 03  FEB BILLING SUMMARY           833.98        .00           .00
  _      03 / 03  MAR BILLING SUMMARY          1318.78        .00           .00
  _      04 / 03  APR BILLING SUMMARY              .00        .00           .00


                                                                          Bottom

F3=Exit                      F12=Previous     F8=Pending Adj.
```

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) _____

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   ☐ I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   ☐ II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,      *Also complete AO 120 or AO 121
           740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.         for patent, trademark or copyright cases

   ☒ III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
           315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
           380, 385, 450, 891.

   ☐ IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
           690, 810, 861-865, 870, 871, 875, 900.

   ☐ V.    150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

   _____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
   
   YES ☐    NO ☒

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)
   
   YES ☐    NO ☒
   
   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
   
   YES ☐    NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
   
   YES ☐    NO ☒

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
   
   YES ☒    NO ☐
   
   A. If yes, in which division do all of the non-governmental parties reside?
   
      Eastern Division ☒    Central Division ☐    Western Division ☐
   
   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
   
      Eastern Division ☐    Central Division ☐    Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
   
   YES ☐    NO ☐

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME _____
ADDRESS _____
TELEPHONE NO. _____

(Coversheetlocal.wpd - 10/17/02)

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS** *[illegible handwriting]*

**DEFENDANTS** *[illegible handwriting]*

**(b)** County of Residence of First Listed Plaintiff *[illegible]*
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number) *[illegible handwriting]*

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / **PERSONAL PROPERTY** / ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment / Habeas Corpus: | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights / ☐ 540 Mandamus & Other | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | ☐ 550 Civil Rights / ☐ 555 Prison Condition | | | |

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

*[illegible handwriting]*

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ *[illegible]*

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

**VIII. RELATED CASE(S) IF ANY** (See instructions):

JUDGE _____   DOCKET NUMBER _____

DATE *[illegible]*

SIGNATURE OF ATTORNEY OF RECORD *[signature]*

**FOR OFFICE USE ONLY**

RECEIPT # ____  AMOUNT ____  APPLYING IFP ____  JUDGE ____  MAG. JUDGE ____